# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| | : | |
| | : | **CIVIL ACTION** |
| **DERRICK GIBSON** | : | |
| *Plaintiff,* | : | |
| | : | |
| **v.** | : | **No. 22-04383** |
| | : | |
| **JOHNSON AND JOHNSON.** *et al*, | : | |
| *Defendants.* | : | |

## MEMORANDUM

**Kenney, J.**                                                                **July 19, 2023**

Defendants Pennsylvania Department of Corrections ("DOC"), State Correctional Institute ("SCI") Phoenix Deputy Superintendent Mandy Biser-Sipple, and Corrections Health Care Administrator Brittany Huner (collectively "DOC Defendants") move to dismiss in its entirety the Amended Complaint of Plaintiff Derrick Gibson. ECF No. 38. For the reasons set forth below, Moving DOC Defendants' Motion to Dismiss is granted. All claims against DOC Defendants grounded in federal law are dismissed with prejudice, and all claims grounded in state law are dismissed without prejudice. An appropriate Order will follow.

## I.    PROCEDURAL HISTORY

On October 31, 2022, Plaintiff filed an initial complaint seeking monetary damages against (i) DOC Defendants; (ii) Defendants Janssen Biotech, Inc. ("Janssen") and Johnson & Johnson (collectively "Janssen Defendants"); and (iii) Defendant Dr. Anthony Letizio ("Dr. Letizio").[1] ECF No. 1. Plaintiff, proceeding *pro se*, is an incarcerated individual who was, at the time of the

---

[1] According to Plaintiff's Amended Complaint, Dr. Letizio was the Medical Director at SCI Phoenix. ECF No. 33 ¶ 10.

alleged events, being held at Pennsylvania Department of Corrections at SCI Phoenix, located in Collegeville, PA. ECF No. 33 ¶ 4. Plaintiff is currently being held at SCI Pine Grove.

On or about April 3, 2023, Mr. Gibson sought leave to file an Amended Complaint, which was granted on April 5, 2023. ECF Nos. 31, 32. The Amended Complaint was docketed the same day, and it remains the operative pleading. ECF No. 33. All defendants filed timely motions to dismiss: (i) DOC Defendants filed a Motion to Dismiss on April 19, 2023 (ECF No. 38), followed by (ii) Janssen Defendants on April 26, 2023 (ECF No. 43),[2] and (iii) Dr. Letizio on May 8, 2023 (ECF No. 45).[3] On May 8, Plaintiff filed an Opposition (ECF No. 46), though this Opposition did not specifically address the Motion filed by any one specific group of Defendants.[4]

## II.     PLAINTIFF'S COMPLAINT

### A.  Background

Plaintiff suffers from a variety of pre-existing medical issues for which he has been receiving treatment, including hypertension, anxiety, depression, mood swings, anti-personality disorder, and chronic back pain. ECF No. 33 ¶¶ 17-19. Plaintiff has been in "solitary confinement since March 23, 2013 under the PADOC's Restricted Release List[,] which is indefinite solitary confinement in a restricted housing unit of at least 22 hours alone in a cell 7 days a week." *Id.* ¶

---

[2] On May 23, 2023, Plaintiff filed a surreply to the Janssen Defendants' Reply. ECF No. 51.

[3] On May 22, 2023, Plaintiff filed a Declaration for Entry of Default as to Defendant Dr. Anthony Letizio. ECF No. 49. On May 25, 2023, this Court denied Plaintiff's declaration as moot because Dr. Letizio had already filed a Motion to Dismiss. ECF No. 50. The Court further ordered Plaintiff to, on or before June 12, 2023, either file a responsive pleading to Defendant Dr. Letizio's Motion to Dismiss or clarify whether his Opposition filed on May 8, 2023 (ECF No. 46) was also directed toward Defendant Dr. Letizio's Motion to Dismiss. ECF No. 50. Plaintiff, having filed no response to that Order, requested that the Court set a new deadline of July 14, 2023. ECF No. 55. Plaintiff then filed his opposition to Defendant Letizio's Motion to Dismiss on July 14, 2023. ECF No. 56.

[4] Assuming that the Opposite was directed at least in part to them, Janssen Defendants filed a Reply on May 12, 2023. ECF No. 48.

14.  The alleged events took place during the latter half of 2021 (during the height of the COVID-19 pandemic), when Plaintiff was fifty-two years old. *Id.*

Mr. Gibson alleges that, on or around April 8, 2021, he was "pressured" and "misled" into accepting the administration of the Janssen COVID-19 vaccine. *Id.* ¶¶ 14-15. He does not, however, allege that the vaccine was administered without his consent. *See id.* Plaintiff alleges he has suffered "serious physical and psychiatric adverse effects, injury, and risk of death along with financial distress" (*id.* ¶ 4) as a result of inoculation and a "lethal combination of false information, misrepresentation, inadequate clinical testing, gross negligence and recklessness, and inadequate medical health care." *Id.* ¶ 15. Plaintiff avers that, on or around April 8, 2021, the same day he was inoculated, "[t]he J&J Janssen 1-shot vaccination was immediately paused . . . after an inmate over 49 years of age suffered death after inoculation." *Id.* ¶ 16. The recommended pause was lifted less than a month later on May 3, 2021, and the Secretary of Corrections sent a letter to all inmates explaining that "after a thorough review of all data available," the DOC would resume vaccinating inmates that day. *Id.* at Ex-B.

Plaintiff further alleges that in August 2021, he discovered a "clot" on his left elbow. *Id.* ¶ 24. Plaintiff believes that Defendants Bisser-Sipple and Huner did not send him to an outside hospital due to "personal dislike" and in retaliation for Plaintiff's acts of protected free speech (i.e., hunger strikes). *Id.* ¶¶ 27, 37. However, Plaintiff does admit he was being treated for his alleged injury. *Id.* Plaintiff avers that, in December 2021, Dr. Letizio labeled the "clot" as a "cyst" and performed a "surgical procedure" on Plaintiff's left elbow without proper "sanitation" and "protective equipment." *Id.* ¶¶ 27-30. Plaintiff contends this procedure was done without an anesthetic, but also states that Dr. Letizio "numbed" Plaintiff's left elbow. *Id.* ¶ 30. Then, in January 2022, Dr. Letizio came to Plaintiff's cell while Plaintiff was engaged in a hunger strike

and brought Plaintiff to the medical triage room. *Id.* ¶ 33. There, Dr. Letizio performed a procedure in the same manner. *Id.* Then, in or around March 2022, Plaintiff received a steroid injection from a different doctor (Dr. Bazel) for the "blood clot" on his left elbow, which Plaintiff claims provided him with immediate relief. *Id.* ¶ 36. Finally, Plaintiff alleges that DOC Defendants overcharged him for these "surgeries" with co-pay charges of over $900, which were withdrawn from Plaintiff's prison account. *Id.* ¶¶ 38-40.

### B.  Causes of Action

Plaintiff avers the following causes of action, all of which are asserted against DOC Defendants, with the exception of Claim One:

(I)     Violation of the False Claims Act Against Janssen Defendants. *Id.* ¶¶ 67-71.

(II)    Violation of the Americans with Disabilities Act ("ADA") and Rehabilitation Act ("RA") Against DOC Defendants and Dr. Letizio. *Id.* ¶¶ 72-78.

(III)   Violation of First Amendment Against DOC Defendants and Dr. Letizio. *Id*. ¶¶ 79, 80.

(IV)    Eighth Amendment Denial of Adequate Medical Healthcare Against DOC Defendants and Dr. Letizio. *Id.* ¶¶ 81-85.

(V)     Violation of the Eighth Amendment's Prohibition of Cruel and Unusual Punishment Against DOC Defendants and Dr. Letizio. *Id.* ¶¶ 86-89

(VI)    Eighth Amendment Supervisory Liability Claim Against DOC Defendants. *Id.* ¶¶ 90-92.

(VII)   Abuse of Process State Law Claim Against Janssen Defendants, DOC Defendants, and Dr. Letizio. *Id.* ¶¶ 93-100

(VIII)  Intentional Infliction of Emotional Distress Claim Against DOC Defendants and Dr. Letizio. *Id.* ¶¶ 101-102

(IX)    Fourteenth Amendment Due Process and Equal Protection Claims Against Janssen Defendants, DOC Defendants, and Dr. Letizio. *Id.* ¶¶ 103-105

(X)     Medical Malpractice Claim Against Janssen Defendants, DOC Defendants, and Dr. Letizio. *Id.* ¶¶ 106-107.

III.   **STANDARD OF REVIEW**

For a complaint to survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Additionally, "[a] pleading that offers 'labels and conclusions' . . . will not do. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations omitted).

IV.   **DISCUSSION**

Having accepted all factual allegations made by Plaintiff as true, and construing such allegations in the light most favorable to Plaintiff to determine if he may be entitled to relief, the Court finds that Plaintiff has not shown a plausible claim for relief for any of his claims against DOC Defendants.[5]

---

[5] As Plaintiff points out (ECF No. 35 at 3), allegations of a *pro se* complaint must be held to less stringent standards than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Still, under this relaxed standard, Plaintiff fails to allege sufficient facts that state any claim against DOC Defendants.

**A. The Americans with Disabilities Act ("ADA") (42 U.S.C § 12101) and the Rehabilitation Act ("RA") (29 U.S.C. § 794) (Count II)** [6]

Plaintiff contends that his mental and physical health conditions qualify him as an individual who requires accommodations under the ADA. ECF No. 33 ¶¶ 73-75. Specifically, Plaintiff alleges that "Defendants discriminated against [him] by not providing a safer COVID-19 vaccine alternative . . . by failing to provide information that they knew or should have known about [the COVID vaccine's] adverse effects, by failing to provide reasonable medical health care and accommodations, failing to inform and train staff to recognize and appropriately respond to the adverse side effects and greater risk with individuals with disabilities, hypertension, on blood thinning/pressure medications, over 49 years old and under prolonged, indefinite solitary confinement that he faced as a result of such and greater risk to African descent." *Id.* ¶ 77.

To state a claim under the Americans with Disabilities Act,[7] a plaintiff must allege that "(1) he is a qualified individual; (2) with a disability; (3) who was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability." *Kokinda v. Pennsylvania Dep't of Corrs.*, 779 F. App'x. 944, 950 (3d Cir. 2019).

---

[6] Plaintiff briefly mentions the Rehabilitation Act ("RA"). ECF No. 33 ¶ 1. As DOC Defendants note, the ADA and RA "are all to be interpreted consistently, and that all have the same standard for determination of liability." *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 274 (3d Cir. 2012); *see also Donahue v. Consol. Rail Corp.*, 224 F.3d 226, 229 (3d Cir. 2000). ECF No. 38 at 10.

[7] DOC Defendants contend that Plaintiff's "bald assertions that DOC Defendants discriminated against him are insufficient to state a claim," as Plaintiff fails to allege that he was discriminated against *because of* his diagnoses." ECF No. 38 at 11 (emphasis original). This statement is not a proper articulation of the legal standard.

Plaintiff fails to adequately plead a claim under the ADA and, therefore, the Court need not address his claims for compensatory damages.[8] In the present case, when drawing all reasonable inferences in favor of Plaintiff, the Court finds that Plaintiff has failed to allege a specific incident where he was excluded from participation in or denied benefits of services, programs, or activities. Rather, Plaintiff merely makes conclusory allegations, stating he was denied accommodations, without alleging specific discriminatory acts or omissions. *See* ECF No. 33 ¶¶ 72-77. Plaintiff asserts that Defendants failed to provide a safer vaccine alternative, but it is unclear what he means or whether such an alternative was available during the height of the COVID-19 pandemic. Moreover, if Plaintiff did not want to get vaccinated, he was not required to do so; rather, Plaintiff could have forgone the vaccine provided he were quarantined in a unit for unvaccinated prisoners. *See id.* ¶ 86. These allegations do not support an inference that Plaintiff was excluded from participation in, or denied the benefits of, the services, programs, or activities of a public entity,[9] nor do they establish that DOC Defendants discriminated against him. Because Plaintiff's claim is totally unsupported by any factual allegations as to his being denied the benefits of services, programs, or activities, his ADA and RA claim must be dismissed.

---

[8] "A plaintiff seeking compensatory damages under the ADA must also sufficiently allege that the public entity intentionally discriminated against him or her." *Geness v. Admin. Off.*, 974 F.3d 263, 274 n.11 (3d Cir. 2020) (citing *Haberle v. Troxell*, 885 F.3d 170, 181 (3d Cir. 2020)). To plead such intentional discrimination, a Plaintiff must allege "deliberate indifference," which requires "(1) knowledge that a federally protected right is substantially likely to be violated ... and (2) failure to act despite that knowledge." *Haberle*, 885 F.3d at 181 (quoting *S.H. v. Lower Merion Sch. Dist.*, 729 F.3d 248, 265 (3d Cir. 2013)) (alteration in original). The Court need not reach this issue because Plaintiff's claim is deficient on other grounds. However, Plaintiff also fails to plead any facts that could plausibly suggest deliberate indifference.

[9] The Supreme Court has explained that modern prisons provide many services, programs, or activities such as "recreational 'activities,' medical 'services,' and educational and vocational 'programs,' all of which at least theoretically 'benefit' the prisoners (and any of which disabled prisoners could be 'excluded from participation in')." *Pa. Dep't. of Corrs. v. Yeskey*, 524 U.S. 206, 210 (1998). Surely, a prisoner's consenting to a non-compulsory vaccine does not qualify as a service, program, or activity from which one could be excluded from participation.

**B. First Amendment Violation (Count III)**

Next, Plaintiff asserts that he was deprived of his First Amendment right to be free from retaliation in that he was subjected to a "campaign of harassment to prohibit and abridge his access of redress of grievance, government officials, and court." ECF No. 33 ¶ 79; *see also* U.S. Const. Amend. I. Plaintiff continues, stating that the "[D]efendants['] conduct and adverse actions would deter, discourage, prevent or stop the average or any prisoner from engagement, causing damage and injury, was not needed . . . and did not serve a penological purpose." ECF No 33 ¶ 79. Plaintiff further contends that Defendants retaliated against him by overcharging Plaintiff with "frivolous, false and fraudulent medical co-pay charges and fees of over $900," which Defendants allegedly withdrew from Plaintiff's prison account. *Id.* ¶¶ 38-40.

DOC Defendants argue that the claims against the DOC as an entity relating to violations of constitutional amendments should be dismissed because the DOC is not a "person" within the meaning of 42 U.S.C. § 1983. DOC Defendants state that "[a]bsent consent by the State, the Eleventh Amendment bars suits for damages in federal court by a private party against states, state agencies and state officials in their official capacities." ECF No. 38 at 6 (citing *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261 (1997)). The Court finds that the Pennsylvania DOC's immunity as an entity alone is a sufficient basis for dismissal of Plaintiff's claims under the First Amendment against the DOC as an entity. *See Lavia v. Pa Dep't of Corrs.*, 224 F.3d 190, 194 (3d Cir. 2000) ("Because the Commonwealth of Pennsylvania's Department of Corrections is a part of the executive department of the Commonwealth . . . it shares in the Commonwealth's Eleventh Amendment immunity.").[10]

---

[10] DOC Defendants also argue that all claims against Defendants Biser-Sipple and Huner should be dismissed because Plaintiff failed to allege the requisite "personal involvement in the alleged wrongdoing" for liability to attach. ECF No. 38 at 8 (citing *Evancho v. Fisher*, 423 F.3d 347, 353

As to all Defendants, DOC Defendants also argue that Plaintiff's claim fails because he has failed to allege sufficient facts or a causal connection. ECF No. 38 at 21. DOC Defendants argue that "[t]he protected conduct and adverse action must be linked by a credible assertion that retaliation was the motivating factor; Plaintiff offers no such evidence in his Amended Complaint." *Id.* According to DOC Defendants, "Plaintiff has not presented any facts to support his vague allegations that the alleged charging/over-charging of medical fees and alleged refusal to send Plaintiff to an outside hospital were in any way linked to his litigious efforts or the exercise of any other constitutional rights." ECF No. 38 at 21.

To state a prima facie case for retaliation, a prisoner must show, "(1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him." *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (internal quotations omitted). Merely alleging a retaliatory motive and a resulting injury is insufficient—the motive must cause the injury. *See Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (citing *Hartman v. Moore*, 547 U.S. 250, 259 (2006)) (noting a plaintiff must demonstrate a "causal connection" between the government defendant's "retaliatory animus" and the plaintiff's "subsequent injury."). Further, the motive "must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.*

This Court also agrees with DOC Defendants that Plaintiff has failed to state a prima facie case for retaliation under the First Amendment. *See Mitchell*, 318 F.3d at 530. Plaintiff fails to

---

(3d. Cir. 2005)). However, the Court declines to summarily dismiss all claims against the individual defendants based on that argument and instead dismisses the claims after analyzing each claim separately.

allege specific facts that could give rise to an inference of a retaliatory motive causing a specific adverse act. *See* ECF No. 33 ¶ 79. Rather, Plaintiff merely states in conclusory fashion that his rights under the First Amendment were abridged without pointing to any specific adverse action. Here, as in *Twombly*, "a formulaic recitation of the elements of a cause of action" is insufficient to state a claim for which relief can be granted. *Twombly*, 550 U.S. at 555. Accordingly, this claim under the First Amendment must be dismissed.

### C. Eighth Amendment Denial of Adequate Medical Healthcare (Count IV)

As to Plaintiff's claim of the denial of adequate medical healthcare under the Eighth Amendment, Plaintiff alleges that DOC Defendants were "deliberately indifferent" to Plaintiff's need for medical care in "choosing not to consider known factual evidence of adverse effects and risk of death" from inoculation and "prolonging [Plaintiff's] pain and suffering." ECF No. 33 ¶ 82; *see also* U.S. Const. Amend. VIII.

DOC Defendants argue that a non-medical prison official is not deliberately indifferent merely by failing to respond to an inmate's medical complaints when that inmate is already being treated by a doctor. ECF No. 38 at 18 (citing *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993). DOC Defendants further note that "'[a]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference.'" ECF No. 38 at 19 (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)). Therefore, DOC Defendants contend that, because they are non-medical corrections personnel and Plaintiff was being treated by a physician for his medical ailments, these claims should be dismissed. *Id.* DOC Defendants further argue that Plaintiff fails to make any specific allegations that DOC Defendants "denied him treatment, were otherwise responsible for providing him with

treatment, or were actually aware of an excessive risk to his health." *Id.* DOC Defendants argue that they reasonably deferred to medical staff. *Id.*

To state a claim for denial of adequate medical care under the Eighth Amendment, an inmate must demonstrate "deliberate indifference" to a "serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976) ("It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment") (citations omitted). Deliberate indifference exists "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

Here, the Court finds that Plaintiff failed to allege specific facts that could plausibly give rise to an inference of "deliberate indifference" to a "serious medical need." *See Estelle*, 429 U.S. at 104. Plaintiff also fails to allege specific facts relating to prison guards "denying or delaying access to medical care." *Id.* Rather, Plaintiff's Amended Complaint facially makes clear that he was receiving treatment from medical professionals. *See e.g.,* ECF No. 33 ¶¶ 27-30, 32, 36. For example, Plaintiff states he had been taking prescribed medication for his medical conditions. *Id.* ¶¶ 17-19. Thus, because Plaintiff was being treated by medical professionals, and Defendants deferred to medical professionals, this Court concludes that Plaintiff has failed to state a claim for denial of adequate healthcare under the Eighth Amendment. *See Iqbal*, 556 U.S. at 678.[11] Therefore, this claim must be dismissed.

---

[11] The Court also notes that, as discussed *supra*, the Pennsylvania Department of Corrections' Eleventh Amendment immunity alone is a sufficient basis for dismissal of this constitutional claim against the DOC as an entity. *See Lavia v. Pa. Dep't of Corrs.*, 224 F.3d 190, 194 (3d Cir. 2000).

### D.  Eighth Amendment Cruel and Unusual Punishment (Count V)

Plaintiff alleges that DOC Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment. *See* U.S. Const. Amend. VIII. Specifically, Plaintiff alleges DOC Defendants violated his Eighth Amendment rights by placing him "under the threat of further isolation and punitive like acts of being labeled as an 'unvaccinated' prisoner";  requiring housing in designated unvaccinated pods, thereby forcing him to shower, exercise, and attend law library last; failing to provide appropriate accommodations and housing; not enforcing a court order regarding a hunger strike; retaliatory conduct; discrimination and inhumane conditions; failing to consider the COVID-19 pandemic and safety measures or the adverse effects of the COVID-19 vaccine; and failing to provide reasonable care and conditions for the Plaintiff. *See* ECF No. 33 ¶¶ 86-87.

The Eighth Amendment prohibits punishment that "violates civilized standards of humanity and decency." *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997). To "sufficiently allege prison officials violated [Plaintiff's] Eighth Amendment rights by imposing inhumane conditions, [Plaintiff's] complaint had to allege facts showing (1) the deprivation he endured was sufficiently serious, and (2) the prison officials had a sufficiently culpable state of mind." *Clark v. Coupe*, 55 F.4th 167, 179 (3d. Cir. 2022) (internal quotations omitted).

DOC Defendants argue that Plaintiff has failed to satisfy either prong to sufficiently allege an Eighth Amendment cruel and unusual punishment violation. ECF No. 38 at 16. As to the first prong's requiring an objective showing of a "sufficiently serious" deprivation, DOC Defendants argue that "the publicly available information outlining the DOC's response to COVID, demonstrates the DOC has taken the threat very seriously and is employing all available means to

mitigate the risk." *Id.* [12] DOC Defendants also state that vaccination of inmates is voluntary and that inmates were merely offered an incentive to encourage the vaccine. *Id.* Moreover, DOC Defendants contend that "despite Plaintiff's allegations that the DOC Defendants disregarded an increased risk of the vaccine to individuals over the age of 49 such as himself, the documentation he provides in support does not corroborate such an assertion; in fact, the information shows that the increased risk of thrombosis with thrombocytopenia occurred in females ages 18 through 49." *Id; see also* ECF No. 33 at Ex-B (showing that Plaintiff is not a member of the group at an increased risk for thrombosis).

As to the second prong's requiring a sufficiently culpable state of mind, DOC Defendants further argue that Plaintiff "has not, and cannot, demonstrate that DOC Defendants consciously ignored the threat posed by the COVID-19 virus." ECF No. 33 at 15. DOC Defendants rely on several district court opinions issued during the COVID-19 pandemic, in which courts held that the inability to completely protect inmates from the spread of the virus is insufficient to constitute a constitutional violation. *Id.*

Here, the Court finds that Plaintiff has failed to both provide detailed allegations about the specific harm he has suffered and sufficiently demonstrate the alleged actors' culpable state of mind. Rather, Plaintiff's Amended Complaint supports DOC Defendants' contention that DOC Defendants took the challenges posed by the COVID-19 pandemic seriously and took steps to mitigate such risks. *See Fennell v. Wetzel*, 2023 WL 1997116 at *5 (M.D. Pa. Feb. 14, 2023) (holding that separating vaccinated inmates from unvaccinated inmates does not represent "conscience-shocking conduct" and is instead a reasonable course of conduct); *Spellman v. Doe*, 2023 WL 2666694, at *3 (M.D. Pa. Mar. 28, 2023) (concluding that segregating unvaccinated

---

[12] *See* https://www.cor.pa.gov/Pages/COVID-19.aspx

from vaccinated inmates is "an eminently reasonable course of action to protect against the spread of the [COVID-19] virus"); *Walker v. Sorber*, 2022 WL 4586137 at *5, 7 (E.D. Pa. Sept. 29, 2022) ("Due to the necessarily close and continued contact that prisoners experience, SCI-Phoenix had every reason to attempt to prevent a large-scale outbreak by segregating vaccinated from unvaccinated prisoners."). [13]

### E.  Eighth Amendment Supervisory Liability (Count VI)

As to Plaintiff's claim of supervisory liability under the Eighth Amendment, Plaintiff alleges that DOC Defendants are responsible for pursuing policies and employees who were "deliberately indifferent" to the needs of inmates. ECF No. 33 ¶ 90; *see also* U.S. Const. Amend. VIII. Specifically, Plaintiff avers that DOC Defendants evinced deliberate indifference by hiring Dr. Letizio since "he has a history of performing unlawful, unreasonable, and inappropriate medical procedures" and by failing to "supervise or intervene in said actions and conduct at SCI-Phoenix by him." ECF No. 33 ¶ 91.

DOC Defendants argue that this claim should be dismissed because Plaintiff fails to allege sufficient facts and merely states conclusory allegations.  Specifically, DOC Defendants argue that "Defendants Biser-Sipple and Huner are included as a result of their supervisory roles within SCI-Phoenix, rather than any specific action or inaction on their part relative to Plaintiff's rights." ECF No. 38 at 9. According to DOC Defendants, "Plaintiff's vague, conclusory allegations regarding their alleged failure to intervene on his behalf and protect him from cruel and unusual punishment, fall short of establishing their awareness of or acquiescence in any violations of the DOC's policies, COVID protocols, or any other alleged constitutional violation." *Id.* (citing *Evancho*, 423

---

[13] The Court also notes that, as discussed *supra*, the Pennsylvania Department of Corrections' Eleventh Amendment immunity alone is a sufficient basis for dismissal of this constitutional claim against the DOC as an entity. *See Lavia*, 224 F.3d at 194.

F.3d at 353); *see also Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior.").

The Third Circuit has developed a "four-part test, based on the Supreme Court's reasoning in *City of Canton v. Harris*, 489 U.S. 378 (1989) . . . for supervisor liability on an Eighth Amendment claim for failure to properly supervise." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 134 (3d Cir. 2001). Thus, "to hold a supervisor liable because his policies or practices led to an Eighth Amendment violation, the plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of the Eighth Amendment injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." *Id.*

The Court agrees with DOC Defendants that Plaintiff's vague, conclusory allegations regarding the Defendants' supposed omissions are insufficient to state a claim for which relief can be granted. Plaintiff fails to point to a specific policy or practice that the supervisors employed that created an Eight Amendment injury, so he cannot satisfy the first prong of the four-part test. *See Beers-Capitol*, 256 F.3d at 134. Plaintiff merely avers, in conclusory fashion, that Defendants were deliberately indifferent to the potential risk of hiring Dr. Letizio without providing any factual basis to support his conclusory allegations. *See* ECF No. 33 ¶¶ 90-91.[14] Thus, this claim must be dismissed.

---

[14] The Court also notes that, as discussed *supra*, the Pennsylvania Department of Corrections' Eleventh Amendment immunity alone is a sufficient basis for dismissal of this constitutional claim against the DOC as an entity. *See Lavia*, 224 F.3d at 194.

### F.  Fourteenth Amendment Due Process and Equal Protection (Count IX)

Plaintiff argues that the Janssen Defendants, DOC Defendants, and Dr. Letizio violated Plaintiff's Fourteenth Amendment Equal Protection and Due Process rights by "not warning and withholding crucial information of the adverse effects" associated with the COVID-19 vaccine and the "increased risk to individuals" with pre-existing medical conditions. ECF No. 33 ¶ 103. This Court agrees with DOC Defendants that Plaintiff has failed to state a claim under the Fourteenth Amendment's Due Process and Equal Protection Clauses. *See* U.S. Const. Amend. XIV.

#### 1.  Equal Protection

It is unclear whether Plaintiff intended to allege that the DOC's separating inmates based on vaccination status or providing the vaccine to "increased risk individuals" violates the Equal Protection Clause. *See* ECF No. 33 ¶¶ 103-05. Regardless, neither claim implicates a "suspect or quasi-suspect class," and furthermore, "state action . . . is presumed to be valid and will be upheld if it is 'rationally related to a legitimate state interest.'" *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 423 (3d Cir. 2000) (quoting *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 440 (1985)). In the prison setting, when a "regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987); *see also Rush v. Wetzel*, 2023 WL 3456921, at *4 (W.D. Pa. Apr. 12, 2023) (finding that defendant prison officials "have a legitimate penological interest in keeping inmates safe from the COVID-19 virus."). Here, Defendants' separation of vaccinated and unvaccinated inmates and was reasonably related to the legitimate penological interest of keeping inmates safe from the COVID-19 virus.

### 2.  Due Process Clause

As to Plaintiff's claim under the Due Process Clause, DOC Defendants argue that the Third Circuit has expressly extended a limited substantive due process right to refuse medical treatment to prisoners and that this right is circumscribed by countervailing state interests. ECF No. 38 at 22; *see also White v. Napoleon*, 897 F.2d 103, 113 (3d. Cir. 1990) (holding that "convicted prisoners . . . retain a limited right to refuse treatment and a related right to be informed of the proposed treatment and viable alternatives. The scope of the right to refuse treatment, however, must be circumscribed by legitimate countervailing State interests. . . . A prisoner's right to refuse treatment is useless without knowledge of the proposed treatment. Prisoners have a right to such information as is reasonably necessary to make an informed decision to accept or reject proposed treatment, as well as a reasonable explanation of the viable alternative treatments that can be made available in a prison setting.").

In a substantive due process challenge to governmental conduct, "the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Benn v. Univ. Health Sys., Inc.*, 371 F.3d 165, 174 (3d Cir. 2004) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)). Whether governmental action shocks the conscience is "a matter of law for the courts to decide." *Id.* (quoting *Rochin v. California*, 342 U.S. 165, 172 (1952)).

According to Plaintiff's Amended Complaint, he was informed about potential side effects and given the option of accepting the vaccine or being moved to housing for unvaccinated prisoners. *See* ECF No. 33 ¶ 86. Here, as in *Fennel*, "Defendants' purported action of attempting to vaccinate prisoners against the COVID-19 virus and separating vaccinated and unvaccinated

inmates in no way represents 'conscience-shocking' conduct." *Fennel*, 2023 WL 1997116 at *5.

Thus, Plaintiff has failed to state a claim under the Fourteenth Amendment's Due Process Clause.[15]

### G.  State Law Claims (Counts VII, VIII, X)

Plaintiff seeks to invoke this court's supplemental jurisdiction over related state law claims.

ECF No. 33 ¶ 2. Particularly, as it relates to the DOC Defendants, Plaintiff alleges claims of (1)

Abuse of Process (42 Pa.C.S. § 8351) (Count VII); (2) Intentional Infliction of Emotional Distress

("IIED") (Count VIII); and (3) Medical Malpractice (Count X). See *id.* ¶¶ 93-102, 106-07.

Having dismissed all outstanding federal claims, the Court will decline to exercise

supplemental jurisdiction over Plaintiff's state law claims. A court "may decline to exercise

supplemental jurisdiction [over state law claims] if . . . the district court has dismissed all claims

over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[P]endent jurisdiction is a

doctrine of discretion, not of plaintiff's right," so whether or not to exercise supplemental

jurisdiction once all federal claims have been dismissed is within the discretion of the district court.

*Hall-Wadley v. Maint. Dep't*, 386 F. Supp. 3d 512, 519 (E.D. Pa. 2019) (citing *United Mine

Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)). "When all federal claims are eliminated

before trial, 'the balance of factors to be considered under the pendent jurisdiction doctrine—

judicial economy, convenience, fairness, and comity—will point toward declining to exercise

jurisdiction over the remaining state-law claims.'" *Id.* (citing *Carnegie-Mellon Univ. v. Cohill*, 484

U.S. 343, 350 n.7 (1988)). Because this case has not progressed past the motion to dismiss stage,

the Court finds it appropriate to exercise its discretion and dismiss the remaining state law claims

without prejudice.

---

[15] The Court also notes that, as discussed *supra*, the Pennsylvania Department of Corrections'
Eleventh Amendment immunity alone is a sufficient basis for dismissal of this constitutional claim
against the DOC as an entity. *See Lavia v. P, Dep't of Corr.*, 224 F.3d 190, 194 (3d Cir. 2000).

## V.     CONCLUSION

Therefore, the Motion to Dismiss (ECF No. 38) is granted. All claims grounded in federal law against Defendant Pennsylvania Department of Corrections, Defendant Mandy Biser-Sipple, and Defendant Brittany Huner are dismissed with prejudice and all claims grounded in state law are dismissed without prejudice.

**BY THE COURT:**

**/s/ Chad F. Kenney**

**CHAD F. KENNEY, JUDGE**