IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| | : | CIVIL ACTION |
| **DERRICK GIBSON** | : | |
| *Plaintiff,* | : | |
| | : | |
| v. | : | No. 22-04383 |
| | : | |
| **JOHNSON AND JOHNSON.** *et al*, | : | |
| *Defendants.* | : | |

**MEMORANDUM**

**Kenney, J.**                                                                                                            **July 28, 2023**

Defendants Janssen Biotech, Inc. ("Janssen") and Johnson & Johnson (collectively "Janssen Defendants") move to dismiss in its entirety the Amended Complaint of Plaintiff Derrick Gibson. ECF No. 43. For the reasons set forth below, Janssen Defendants' Motion to Dismiss is granted. All claims against Janssen Defendants grounded in federal law are dismissed with prejudice, and all claims grounded in state law are dismissed without prejudice. An appropriate Order will follow.

**I.   PROCEDURAL HISTORY**

On October 31, 2022, Plaintiff filed an initial complaint seeking monetary damages against (i) DOC Defendants; (ii) Defendants Janssen Biotech, Inc. ("Janssen") and Johnson & Johnson (collectively "Janssen Defendants"); and (iii) Defendant Dr. Anthony Letizio ("Dr. Letizio").[1] ECF No. 1. Plaintiff, proceeding *pro se*, is an incarcerated individual who was, at the time of the alleged events, being held at Pennsylvania Department of Corrections at SCI Phoenix, located in Collegeville, PA. ECF No. 33 ¶ 4. Plaintiff is currently being held at SCI Pine Grove.

---

[1] According to Plaintiff's Amended Complaint, Dr. Letizio was the Medical Director at SCI Phoenix. ECF No. 33 ¶ 10.

On or about April 3, 2023, Mr. Gibson sought leave to file an Amended Complaint, which was granted on April 5, 2023. ECF Nos. 31, 32. The Amended Complaint was docketed the same day, and it remains the operative pleading. ECF No. 33. All defendants filed timely motions to dismiss: (i) DOC Defendants filed a Motion to Dismiss on April 19, 2023 (ECF No. 38), followed by (ii) Janssen Defendants on April 26, 2023 (ECF No. 43),[2] and (iii) Dr. Letizio on May 8, 2023 (ECF No. 45).[3] On May 8, Plaintiff filed an Opposition (ECF No. 46), though this Opposition did not specifically address the Motion filed by any one specific group of Defendants.[4]

## II. PLAINTIFF'S COMPLAINT

### A. Background

Plaintiff suffers from a variety of pre-existing medical issues for which he has been receiving treatment, including hypertension, anxiety, depression, mood swings, anti-personality disorder, and chronic back pain. ECF No. 33 ¶¶ 17-19. Plaintiff has been in "solitary confinement since March 23, 2013 under the PADOC's Restricted Release List[,] which is indefinite solitary confinement in a restricted housing unit of at least 22 hours alone in a cell 7 days a week." *Id.* ¶ 14. The alleged events took place during the latter half of 2021 (during the height of the COVID-19 pandemic), when Plaintiff was fifty-two years old. *Id.*

---

[2] On May 23, 2023, Plaintiff filed a sur reply to the Janssen Defendants' Reply. ECF No. 51.

[3] On May 22, 2023, Plaintiff filed a Declaration for Entry of Default as to Defendant Dr. Anthony Letizio. ECF No. 49. On May 25, 2023, this Court denied Plaintiff's declaration as moot because Dr. Letizio had already filed a Motion to Dismiss. ECF No. 50. The Court further ordered Plaintiff to, on or before June 12, 2023, either file a responsive pleading to Defendant Dr. Letizio's Motion to Dismiss or clarify whether his Opposition filed on May 8, 2023 (ECF No. 46) was also directed toward Defendant Dr. Letizio's Motion to Dismiss. ECF No. 50. Plaintiff, having filed no response to that Order, requested that the Court set a new deadline of July 14, 2023. ECF No. 55. Plaintiff then filed his opposition to Defendant Letizio's Motion to Dismiss on July 14, 2023. ECF No. 56.

[4] Assuming that the Opposition was directed at least in part to them, Janssen Defendants filed a Reply on May 12, 2023. ECF No. 48.

Mr. Gibson alleges that, on or around April 8, 2021, he was "pressured" and "misled" into accepting the administration of the Janssen COVID-19 vaccine. *Id*. ¶¶ 14-15. He does not, however, allege that the vaccine was administered without his consent. *See id*. Plaintiff alleges he has suffered "serious physical and psychiatric adverse effects, injury, and risk of death along with financial distress" (*id.* ¶ 4) as a result of inoculation and a "lethal combination of false information, misrepresentation, inadequate clinical testing, gross negligence and recklessness, and inadequate medical health care." *Id.* ¶ 15. Plaintiff avers that, on or around April 8, 2021, the same day he was inoculated, "[t]he J&J Janssen 1-shot vaccination was immediately paused . . . after an inmate over 49 years of age suffered death after inoculation." *Id.* ¶ 16. The recommended pause was lifted less than a month later on May 3, 2021, and the Secretary of Corrections sent a letter to all inmates explaining that "after a thorough review of all data available," the DOC would resume vaccinating inmates that day. *Id.* at Ex-B.

Plaintiff further alleges that in August 2021, he discovered a "clot" on his left elbow. *Id.* ¶ 24. Plaintiff believes that Defendants Bisser-Sipple and Huner did not send him to an outside hospital due to "personal dislike" and in retaliation for Plaintiff's acts of protected free speech (i.e., hunger strikes). *Id.* ¶¶ 27, 37. However, Plaintiff does admit he was being treated for his alleged injury. *Id.* Plaintiff avers that, in December 2021, Dr. Letizio labeled the "clot" as a "cyst" and performed a "surgical procedure" on Plaintiff's left elbow without proper "sanitation" and "protective equipment." *Id.* ¶¶ 27-30. Plaintiff contends this procedure was done without an anesthetic, but also states that Dr. Letizio "numbed" Plaintiff's left elbow. *Id.* ¶ 30. Then, in January 2022, Dr. Letizio came to Plaintiff's cell while Plaintiff was engaged in a hunger strike and brought Plaintiff to the medical triage room. *Id.* ¶ 33. There, Dr. Letizio performed a procedure in the same manner. *Id.* Then, in or around March 2022, Plaintiff received a steroid injection from

3

a different doctor (Dr. Bazel) for the "blood clot" on his left elbow, which Plaintiff claims provided him with immediate relief. *Id.* ¶ 36. Finally, Plaintiff alleges that DOC Defendants overcharged him for these "surgeries" with co-pay charges of over $900, which were withdrawn from Plaintiff's prison account. *Id.* ¶¶ 38-40.

### B. Causes of Action

Plaintiff avers the following causes of action, four of which are asserted against Janssen Defendants (Claims I, VII, IX, X):

(I) Violation of the False Claims Act Against Janssen Defendants. *Id.* ¶¶ 67-71.

(II) Violation of the Americans with Disabilities Act ("ADA") and Rehabilitation Act ("RA") Against DOC Defendants and Dr. Letizio. *Id.* ¶¶ 72-78.

(III) Violation of First Amendment Against DOC Defendants and Dr. Letizio. *Id.* ¶¶ 79, 80.

(IV) Eighth Amendment Denial of Adequate Medical Healthcare Against DOC Defendants and Dr. Letizio. *Id.* ¶¶ 81-85.

(V) Violation of the Eighth Amendment's Prohibition of Cruel and Unusual Punishment Against DOC Defendants and Dr. Letizio. *Id.* ¶¶ 86-89

(VI) Eighth Amendment Supervisory Liability Claim Against DOC Defendants. *Id.* ¶¶ 90-92.

(VII) Abuse of Process State Law Claim Against Janssen Defendants, DOC Defendants, and Dr. Letizio. *Id.* ¶¶ 93-100

(VIII) Intentional Infliction of Emotional Distress Claim Against DOC Defendants and Dr. Letizio. *Id.* ¶¶ 101-102

(IX) Fourteenth Amendment Due Process and Equal Protection Claims Against Janssen Defendants, DOC Defendants, and Dr. Letizio. *Id.* ¶¶ 103-105

(X) Medical Malpractice Claim Against Janssen Defendants, DOC Defendants, and Dr. Letizio. *Id.* ¶¶ 106-107.

### III. STANDARD OF REVIEW

For a complaint to survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Additionally, "[a] pleading that offers 'labels and conclusions' . . . will not do. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations omitted).

### IV. DISCUSSION

Having accepted all factual allegations made by Plaintiff as true, and construing such allegations in the light most favorable to Plaintiff to determine if he may be entitled to relief, the Court finds that Plaintiff has not shown a plausible claim for relief for any of his claims against the Janssen Defendants.[5]

#### A. Violation of the False Claims Act (31 U.S.C § 3729) (Count I)

Plaintiff alleges Janssen Defendants violated the False Claims Act in marketing the vaccine and providing "intentionally misleading information that it knew or should have known." ECF No. 33 ¶ 68. Plaintiff alleges that this unlawful activity nullifies the PREP Act. *Id.* ¶ 69.

---

[5] As Plaintiff points out (ECF No. 35 at 3), allegations of a *pro se* complaint must be held to less stringent standards than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Still, under this relaxed standard, Plaintiff fails to allege sufficient facts to state any claim against Janssen Defendants.

The Janssen Defendants argue that Plaintiff has not complied with the procedural requirements to file a claim under the False Claims Act.[6] *See* ECF No. 43 at 11. Further, the Janssen Defendants contend that they are immune from suit under the Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15,198 (Mar. 17, 2020) ("PREP Act"). ECF No. 43 at 13-15; *see* Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15,198-203 (Mar. 17, 2020) (immunizing all "[c]overed persons," which include manufacturers of "[c]overed countermeasures," such as vaccines that are "used to treat, diagnose, cure, prevent, or mitigate COVID–19, or the transmission of SARS- CoV-2 or a virus mutating therefrom").

This Court agrees with Janssen Defendants that, as a manufacturer of a COVID-19 vaccine, Janssen is a "covered person," immune from suit for at least one year after the earlier of two dates: the end of the emergency or October 1, 2024. *See Est. of Maglioli v. Andover Subacute Rehab. Ctr. I*, 478 F.Supp.3d 518, 531 (D.N.J. 2020) (noting that the PREP Act precludes "liability claims alleging negligence by a manufacturer in creating a vaccine") (citation omitted), *aff'd sub nom. Maglioli v. All. HC Holdings LLC*, 16 F.4th 393 (3d Cir. 2021). Additionally, Johnson & Johnson is also granted immunity pursuant to the PREP Act as an affiliate of the Janssen COVID-19 manufacturer. *See* 42 U.S.C. § 247d-6d(i)(4)(C) (establishing immunity for "any or all of the parents, subsidiaries, affiliates, successors, and assigns of a manufacturer").

---

[6] The False Claims Act requires private litigants to bring such an action "in the name of the Government," serve a "copy of the complaint and written disclosure of substantially all material evidence and information the person possesses" on the Government, and to file the complaint "in camera," after which it "shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders." 31 U.S.C. § 3730(b)(1)-(2).

6

Even if Defendants weren't granted immunity under the PREP Act, Plaintiff still fails to state a claim under the False Claims Act for both procedural and substantive reasons. First, Plaintiff has failed to comply with any of the *qui tam* procedural requirements. *See supra*, n.6. Second, even assuming compliance with the procedural requirements, as Plaintiff is an incarcerated *pro se* litigant, Mr. Gibson still fails to state a claim under the False Claims Act, because this claim belongs to the United States, a third party, and "an individual proceeding pro se may not represent third parties in federal court." *Ajjahnon v. St. Joseph's Univ. Med. Ctr.*, 840 F. App'x. 667, 668 (3d Cir. 2020) (dismissing a *pro se* litigant's qui tam action without prejudice); *see also, Wojcicki v. SCANA/SCE&G*, 947 F.3d 240, 245 (4th Cir. 2020) (recognizing that "[t]his stance is in accord with the decisions of our sister circuits that have addressed this issue"). Third, Plaintiff fails to state a claim under the False Claims Act because he fails to plead any of the requisite elements.

To state a claim under the False Claims Act, a plaintiff must allege "(1) the defendant presented or caused to be presented to an agent of the United States a claim for payment; (2) the claim was false or fraudulent; and (3) the defendant knew the claim was false or fraudulent." *U.S. v. Gilead Scis, Inc.*, 596 F.Supp.3d 522, 536 (E.D. Pa. 2022) (internal quotations and citations omitted); *see also, U.S. v. Kindred Healthcare, Inc.*, 517 F.Supp.3d 367, 379 (E.D. Pa. 2021) (explaining that a plaintiff "is not required to show the exact content of the false claims in question to survive a motion to dismiss," but "must allege all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where, and how of the events at issue"). Additionally, the alleged misrepresentation must also be material to the Government's payment decision. *See U.S. v. Heart Sol., PC*, 923 F.3d 308, 317-18 (3rd Cir. 2019). Plaintiff has failed to comply with any of the above requirements to state a claim under the False Claims Act.

Therefore, when construing all factual allegations in the light most favorable to Plaintiff, fails to state a claim under the False Claims Act for both procedural and substantive reasons. And, even under a relaxed standard, because Plaintiff merely makes conclusory statements that Janssen Defendants intentionally withheld information from the United States Government without stating how any alleged misrepresentation led to any false claim for payment from the Government (*see Gilead Scis, Inc.*, 596 F.Supp.3d at 536) his claim must be dismissed.

### B.  Fourteenth Amendment Due Process and Equal Protection (Count IX)

Plaintiff argues that the Janssen Defendants, DOC Defendants, and Dr. Letizio violated Plaintiff's Fourteenth Amendment Equal Protection and Due Process rights by "not warning and withholding crucial information of the adverse effects" associated with the COVID-19 vaccine and the "increased risk to individuals" with pre-existing medical conditions. ECF No. 33 ¶ 103. This Court agrees with Janssen Defendants that Plaintiff has failed to state a claim under the Fourteenth Amendment's Due Process and Equal Protection Clauses. U.S. Const. Amend. XIV.

As a threshold matter, it is well-settled that the Fourteenth Amendment does not apply to private parties. *See, e.g.*, *Brentwood Acad. v. Tenn. Secondary Sch. Ass'n.*, 531 U.S. 288, 295 (2001) (explaining that Supreme Court decisions "try to plot a line between state action subject to Fourteenth Amendment scrutiny and private conduct (however exceptionable) that is not); *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 349 (1974) ("[P]rivate action is immune from the restrictions of the Fourteenth Amendment."); *Shelley v. Kraemer*, 334 U.S. 1, 13 (1948) (explaining that the Fourteenth Amendment "offers no shield against merely private conduct").[7]

---

[7] As Janssen Defendants point out, it is unclear Plaintiff intends this alleged Fourteenth Amendment claim to form the basis of a claim under 42 U.S.C. § 1983. ECF No. 43 at 8. Regardless, it is well settled that "under color of law," as used in §1983, has a parallel meaning to "state action" as used in the Fourteenth Amendment." *U.S. v. Price*, 383 U.S. 787, 794 n.7 (1966) (internal quotation marks omitted).

Thus, the inquiry is "whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Jackson*, 419 U.S. at 351 (citing *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 176 (1972)); *see also, Mark v. Borough of Hatboro*, 51 F.3d 1137, 1142 (3d Cir. 1995) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)) ("[D]eciding whether there has been state action requires an inquiry into whether 'there is a sufficiently close nexus between the State and the challenged action . . . so that the action . . . may be fairly treated as that of the State itself.'") (internal quotation marks omitted).

Courts have developed three tests to determine whether private action can be treated as state action. First, whether "the private entity has exercised powers that are traditionally the exclusive prerogative of the State." *Blum*, 457 U.S. at 1005 (1982) (quoting *Jackson*, 419 U.S. at 353 (internal quotation marks omitted)). Second, whether the private entity acted "with the help" of state officials. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 933 (1982). And third, whether "[t]he State has so far insinuated itself into a position of interdependence with . . . [the private actor] that it must be recognized as a joint participant in the challenged activity." *Krynicky v. Univ. of Pittsburgh*, 742 F.2d 94, 98 (3d Cir.1984) (quoting *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725 (1961)) (alteration in original)).

Janssen Defendants' conduct of developing and manufacturing a COVID-19 vaccine cannot be characterized as state action under any of these three tests.[8] First, vaccine development and manufacturing is not the exclusive prerogative of the state. Second, Janssen did not develop

---

[8] *See Bradford v. City of Phila.*, No. 06-cv-5121, 2007 WL 2345278, at *3 (E.D. Pa. Aug. 16, 2007) (dismissing a *pro se* complaint alleging Eighth Amendment violations because Johnson & Johnson is not a state actor); *see also, Holtcamp v. Janssen Sci. Affairs*, No. 14-4780, 2014 WL 5361934, at *3 (D.N.J. Oct. 21, 2014) (holding that Janssen did not act under color of state law in producing medication used by prison officials).

9

the vaccine with the help of state officials. *See Guillotte v. Lafourche Parish*, No. CV 21-1400, 2022 WL 775339, at *4 (E.D. La. Feb. 11, 2022) ("[T]he fact that a corporation . . . manufactured a medical product that allegedly caused injury does not support an inference of state action by the private corporation even if prison medical officials used that product on a prisoner/plaintiff.") (citation omitted), *report and recommendation adopted*, No. CV 21-1400, 2022 WL 742473 (E.D. La. Mar. 11, 2022). Third, no state actor has so far insulated itself with Janssen Defendants' vaccine development and manufacturing "that it must be recognized as a joint participant in the challenged activity." *Krynicky*, 742 F.2d at 98 (3d Cir. 1984); *see also, Eldredge v. Johnson & Johnson*, 5:22-cv-01991-JMG, 2022 WL 2669300, at * 2 (E.D. Pa. July 11, 2022) (dismissing similar claims because the Plaintiff did not plead any "facts suggesting that Johnson & Johnson. . . [1] exercised traditional state powers. . . [2] acted in concert with any state officials[, or 3] share[d] a sufficiently close nexus with any state officials"); *Kaminski v. Oniyuke*, No. 3:19-cv-58, 2019 WL 1877075, at *2 (D. Conn. Apr. 26, 2019) ("[T]he fact that [defendant] manufactured a defective medical device, and state medical officials used that device, does not support an inference of state action on the part of the private corporation.").

Janssen Defendants' receipt of federal and state funds for developing and manufacturing the vaccine is insufficient to transform their conduct into state action under the Fourteenth Amendment. *See Finkbeiner v. Geisinger Clinic*, 623 F.Supp.3d 458, 468 (M.D. Pa. 2022) (dismissing similar claims against a private clinic that received state and federal funding to combat COVID-19 pandemic because the Plaintiff failed to show "that the government [was] indeed responsible for the conduct); *see also, Swartz v. Bd. of Trs. at Univ. of Pa.*, Civ A. No. 21-4330, 2022 WL 852464, at *3 (E.D. Pa. Mar. 23, 2022) (citing *Blum*, 457 U.S. at 1004-05; *Rendell-Baker v. Kohn*, 457 U.S. 830, 840-43 (1982); *Jackson*, 419 U.S. at 358–59) ("The Supreme Court

10

has repeatedly held that extensive regulation or even total public funding do not necessarily make otherwise private actors into public actors."). Therefore, Plaintiff's claim against Janssen Defendants under the Fourteenth Amendment must be dismissed.

### C. State Law Claims (Counts VII, X)

Plaintiff seeks to invoke this court's supplemental jurisdiction over related state law claims. ECF No. 33 ¶ 2. Particularly, as it relates to Janssen Defendants, Plaintiff alleges claims of (1) Abuse of Process (42 Pa.C.S. § 8351) (Count VII) and (2) Medical Malpractice (Count X). *See id.* ¶¶ 93-100, 106-07.

Having dismissed all outstanding federal claims, the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims. A court "may decline to exercise supplemental jurisdiction [over state law claims] if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right," and thus, whether or not to exercise supplemental jurisdiction once all federal claims have been dismissed is within the discretion of the district court. *Hall-Wadley v. Maint. Dep't*, 386 F.Supp.3d 512, 519 (E.D. Pa. 2019) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)). "When all federal claims are eliminated before trial, 'the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Id.* (citing *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Because this case has not progressed past the motion to dismiss stage, the Court finds it appropriate to exercise its discretion and dismiss the remaining state law claims without prejudice.

11

V.  **CONCLUSION**

Therefore, the Motion to Dismiss (ECF No. 38) is granted. All claims grounded in federal law against Janssen Biotech, Inc and Johnson & Johnson are dismissed with prejudice and all claims grounded in state law are dismissed without prejudice.

**BY THE COURT:**

/s/ Chad F. Kenney

**CHAD F. KENNEY, JUDGE**