IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DERRICK GIBSON** | : : : : | **CIVIL ACTION** |
| *Plaintiff,* | : : | |
| v. | : : | No. 22-04383 |
| **JOHNSON AND JOHNSON**, *et al.*, | : : | |
| *Defendants.* | : | |

**MEMORANDUM**

**Kenney, J.**                                                                                                   **August 15, 2023**

Defendant Dr. Anthony Letizio ("Dr. Letizio") moves to dismiss in its entirety the Amended Complaint of Plaintiff Derrick Gibson. ECF No. 45. For the reasons set forth below, Dr. Letizio's Motion to Dismiss is granted. All claims against Dr. Letizio grounded in federal law are dismissed with prejudice, and all claims grounded in state law are dismissed without prejudice. An appropriate Order will follow.

**I.    PROCEDURAL HISTORY**

On October 31, 2022, Plaintiff filed an initial complaint seeking monetary damages against (i) DOC Defendants; (ii) Defendants Janssen Biotech, Inc. ("Janssen") and Johnson & Johnson (collectively "Janssen Defendants"); and (iii) Defendant Dr. Letizio.[1] ECF No. 1. Plaintiff, proceeding *pro se*, is an incarcerated individual who was, at the time of the alleged events, being held at Pennsylvania Department of Corrections at SCI Phoenix, located in Collegeville, PA. ECF No. 33 ¶ 4. Plaintiff is currently being held at SCI Pine Grove.

---

[1] According to Plaintiff's Amended Complaint, Dr. Letizio was the Medical Director at SCI Phoenix. ECF No. 33 ¶ 10.

On or about April 3, 2023, Plaintiff sought leave to file an Amended Complaint, which was granted on April 5, 2023. ECF Nos. 31, 32. The Amended Complaint was docketed the same day, and it remains the operative pleading. ECF No. 33. All defendants filed timely motions to dismiss: (i) DOC Defendants filed a Motion to Dismiss on April 19, 2023 (ECF No. 38), followed by (ii) Janssen Defendants on April 26, 2023 (ECF No. 43),[2] and (iii) Dr. Letizio on May 8, 2023 (ECF No. 45). On May 8, 2023, Plaintiff filed an Opposition (ECF No. 46), though this Opposition did not specifically address the Motion filed by any one specific group of Defendants.[3]

On May 22, 2023, Plaintiff filed a Declaration for Entry of Default as to Defendant Dr. Anthony Letizio. ECF No. 49. On May 25, 2023, this Court denied Plaintiff's Declaration as moot because Dr. Letizio had already filed a Motion to Dismiss. ECF No. 50. The Court further ordered Plaintiff to, on or before June 12, 2023, either file a responsive pleading to Defendant Dr. Letizio's Motion to Dismiss or clarify whether his Opposition filed on May 8, 2023 (ECF No. 46) was also directed toward Defendant Dr. Letizio's Motion to Dismiss. ECF No. 50. Plaintiff, having filed no response to that Order, requested that the Court set a new deadline of July 14, 2023. ECF No. 55. Plaintiff then filed his Opposition to Dr. Letizio's Motion to Dismiss on July 14, 2023. ECF No. 56.

## II. PLAINTIFF'S COMPLAINT

### A. Background

Plaintiff suffers from a variety of pre-existing medical issues for which he has been receiving treatment, including hypertension, anxiety, depression, mood swings, anti-personality

---

[2] On May 23, 2023, Plaintiff filed a sur reply to the Janssen Defendants' Reply. ECF No. 51.

[3] Assuming that the Opposition was directed at least in part to them, Janssen Defendants filed a Reply on May 12, 2023. ECF No. 48.

disorder, and chronic back pain. ECF No. 33 ¶¶ 17-19. Plaintiff alleges that he has been in "solitary confinement since March 23, 2013 under the PADOC's Restricted Release List[,] which is indefinite solitary confinement in a restricted housing unit of at least 22 hours alone in a cell 7 days a week." *Id.* ¶ 14.  However, Plaintiff's Amended Complaint does not develop this allegation of solitary confinement; Plaintiff refers to solitary confinement only in the context of it somehow allegedly relating to Plaintiff's medical treatment. The alleged events took place during the latter half of 2021 (during the height of the COVID-19 pandemic), when Plaintiff was fifty-two years old. *Id.*

Plaintiff alleges that, on or around April 8, 2021, he was "pressured" and "misled" into accepting the administration of the Janssen COVID-19 vaccine. *Id*. ¶¶ 14-15. He does not, however, allege that the vaccine was administered without his consent. *See id*. Plaintiff alleges he has suffered "serious physical and psychiatric adverse effects, injury, and risk of death along with financial distress" (*id*. ¶ 4) as a result of inoculation and a "lethal combination of false information, misrepresentation, inadequate clinical testing, gross negligence and recklessness, and inadequate medical health care." *Id.* ¶ 15. Plaintiff avers that, on or around April 8, 2021, the same day he was inoculated, "[t]he J&J Janssen 1-shot vaccination was immediately paused . . . after an inmate over 49 years of age suffered death after inoculation." *Id.* ¶ 16. The recommended pause was lifted less than a month later on May 3, 2021, and the Secretary of Corrections sent a letter to all inmates explaining that "after a thorough review of all data available," the DOC would resume vaccinating inmates that day. *Id.* at Ex-B.

Plaintiff further alleges that in August 2021, he discovered a "clot" on his left elbow. *Id.* ¶ 24. Plaintiff believes that DOC Defendants, already terminated from this action, did not send him to an outside hospital due to "personal dislike" and in retaliation for Plaintiff's acts of protected

3

free speech (i.e., hunger strikes). *Id.* ¶¶ 27, 37. However, Plaintiff does admit he was being treated for his alleged injury. *Id.* Plaintiff avers that, in December 2021, Dr. Letizio labeled the "clot" as a "cyst" and performed a "surgical procedure" on Plaintiff's left elbow without proper "sanitation" and "protective equipment." *Id.* ¶¶ 27-30. Plaintiff contends this procedure was done without an anesthetic, but also states that Dr. Letizio "numbed" Plaintiff's left elbow. *Id.* ¶ 30. Then, in January 2022, Dr. Letizio came to Plaintiff's cell while Plaintiff was engaged in a hunger strike and brought Plaintiff to the medical triage room. *Id.* ¶ 33. There, Dr. Letizio performed a procedure in the same manner. *Id.* Then, in or around March 2022, Plaintiff received a steroid injection from a different doctor (Dr. Bazel) for the "blood clot" on his left elbow, which Plaintiff claims provided him with immediate relief. *Id.* ¶ 36. Finally, Plaintiff alleges that DOC Defendants, already terminated from this action, overcharged him for these "surgeries" with co-pay charges of over $900, which were withdrawn from Plaintiff's prison account. *Id.* ¶¶ 38-40.

### B. Causes of Action

Plaintiff avers the following causes of action, eight of which are asserted against Dr. Letizio (Claims II, III, IV, V, VII, VIII, IX, X):

(I) Violation of the False Claims Act Against Janssen Defendants. *Id.* ¶¶ 67-71.

(II) Violation of the Americans with Disabilities Act ("ADA") and Rehabilitation Act ("RA") Against DOC Defendants and Dr. Letizio. *Id.* ¶¶ 72-78.

(III) Violation of First Amendment Against DOC Defendants and Dr. Letizio. *Id.* ¶¶ 79, 80.

(IV) Eighth Amendment Denial of Adequate Medical Healthcare Against DOC Defendants and Dr. Letizio. *Id.* ¶¶ 81-85.

(V) Violation of the Eighth Amendment's Prohibition of Cruel and Unusual Punishment Against DOC Defendants and Dr. Letizio. *Id.* ¶¶ 86-89.

(VI) Eighth Amendment Supervisory Liability Claim Against DOC Defendants. *Id.* ¶¶ 90-92.

(VII)   Abuse of Process State Law Claim Against Janssen Defendants, DOC Defendants, and Dr. Letizio. *Id.* ¶¶ 93-100.

(VIII)  Intentional Infliction of Emotional Distress Claim Against DOC Defendants and Dr. Letizio. *Id.* ¶¶ 101-102.

(IX)    Fourteenth Amendment Due Process and Equal Protection Claims Against Janssen Defendants, DOC Defendants, and Dr. Letizio. *Id.* ¶¶ 103-105.

(X)     Medical Malpractice Claim Against Janssen Defendants, DOC Defendants, and Dr. Letizio. *Id.* ¶¶ 106-107.

## III.  STANDARD OF REVIEW

For a complaint to survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Additionally, "[a] pleading that offers 'labels and conclusions' . . . will not do. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations omitted).

## IV.  DISCUSSION

Having accepted all factual allegations made by Plaintiff as true and construing such allegations in the light most favorable to Plaintiff to determine if he may be entitled to relief, the

Court finds that Plaintiff has not shown a plausible claim for relief for any of his claims against Dr. Letizio.[4]

### A. The Americans with Disabilities Act ("ADA") (42 U.S.C § 12101 *et seq.*) and the Rehabilitation Act ("RA") (29 U.S.C. § 794) (Count II)[5]

Plaintiff contends that his mental and physical health conditions qualify him as an individual who requires accommodations under the ADA. ECF No. 33 ¶¶ 73-75. To state a claim under the ADA, a plaintiff must allege that "(1) he is a qualified individual; (2) with a disability; (3) who was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability." *Kokinda v. Pennsylvania Dep't of Corrs.*, 779 F. App'x. 944, 950 (3d Cir. 2019).

Specifically, Plaintiff alleges that all defendants "discriminated against [him] by not providing a safer COVID-19 vaccine alternative[,] . . . by failing to provide information that they knew or should have known about [the COVID-19 vaccine's] adverse effects, by failing to provide reasonable medical health care and accommodations, failing to inform and train staff to recognize and appropriately respond to the adverse side effects and greater risk with individuals with disabilities, hypertension, on blood thinning/pressure medications, over 49 years old and under

---

[4] As Plaintiff points out (ECF No. 35 at 3), allegations of a *pro se* complaint must be held to less stringent standards than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Still, under this relaxed standard, Plaintiff fails to allege sufficient facts to state any claim against Dr. Letizio.

[5] Plaintiff briefly mentions the Rehabilitation Act ("RA"). ECF No. 33 ¶ 1. As DOC Defendants note, the ADA and RA "are all to be interpreted consistently, and that all have the same standard for determination of liability." ECF No. 38 at 10 (quoting *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 274 (3d Cir. 2012) and also citing *Donahue v. Consol. Rail Corp.*, 224 F.3d 226, 229 (3d Cir. 2000)).

prolonged, indefinite solitary confinement that he faced as a result of such and greater risk to African descent." ECF No. 33 ¶ 77.

Here, Plaintiff seeks compensatory and punitive damages under the ADA, in addition to attorney's fees and "such other relief as the Court deems just and proper." ECF No. 33 at 29. However, Title II of the ADA[6] does not provide for suits against individual defendants in their individual capacities. *Kokinda*, 779 F. App'x at 949. Because Plaintiff brings this claim against Dr. Letizio in his individual capacity, Plaintiff does not adequately plead an ADA claim. Therefore, Plaintiff's ADA and RA claim must be dismissed without need to address Plaintiff's claims for compensatory damages.[7]

### B. First Amendment Violation (Count III)

Next, Plaintiff asserts his right to free speech and right to be free from retaliation in alleging that he was subjected to a "campaign of harassment to prohibit and abridge his access of redress of grievance, government officials, and court." ECF No. 33 ¶ 79; *see also* U.S. Const. Amend. I. Plaintiff alleges that he "had the right to engage in constitutional[ly] protected conduct of activism of family and friends[s] calls, concerns, and complaints advocating on his behalf, his verbal and written grievances and complaints and peaceful protest of hunger strikes due to the lack of

---

[6] Title II of the ADA applies to inmates in state prisons. *See Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 213 (1998).

[7] "A plaintiff seeking compensatory damages under the ADA must also sufficiently allege that the public entity intentionally discriminated against him or her." *Geness v. Admin. Off.*, 974 F.3d 263, 274 n.11 (3d Cir. 2020) (citing *Haberle v. Troxell*, 885 F.3d 170, 181 (3d Cir. 2020)). To plead such intentional discrimination, a Plaintiff must allege "deliberate indifference," which requires "(1) knowledge that a federally protected right is substantially likely to be violated . . . and (2) failure to act despite that knowledge." *Haberle*, 885 F.3d at 181 (quoting *S.H. v. Lower Merion Sch. Dist.*, 729 F.3d 248, 265 (3d Cir. 2013)) (alteration in original). The Court need not reach this issue because Plaintiff's claim is deficient on other grounds. However, Plaintiff also fails to plead any facts that could plausibly suggest deliberate indifference.

reasonable, adequate, and appropriate medical health care, accommodations, and human living conditions for which he had the right of free speech and to be free of retaliation and discrimination and cruel and unusual punishment." ECF No 33 ¶ 79. Plaintiff further alleges that the "conduct and adverse actions" of Defendants, including Dr. Letizio, "would deter, discourage, prevent or stop the average or any prisoner from engagement, causing damage and injury, was not needed . . . and did not serve a penological purpose." *Id.*

To state a prima facie case for retaliation under the First Amendment, a prisoner must show, "(1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him." *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (internal quotations omitted). Merely alleging a retaliatory motive and a resulting injury is insufficient—the motive must cause the injury. *See Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (citing *Hartman v. Moore*, 547 U.S. 250, 259 (2006)) (noting a plaintiff must demonstrate a "causal connection" between the government defendant's "retaliatory animus" and the plaintiff's "subsequent injury."). Further, the motive "must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.*

Plaintiff has failed to sufficiently allege the personal involvement of Dr. Letizio in a First Amendment violation. ECF No. 45 at 13. Specifically, Plaintiff has failed to state a prima facie case for retaliation under the First Amendment because Plaintiff does not allege specific facts that could give rise to an inference of a retaliatory motive causing a specific adverse action. *See Mitchell*, 318 F.3d at 530; *see* ECF No. 33 ¶ 79. Rather, Plaintiff merely states in conclusory fashion that his rights under the First Amendment were abridged without pointing to any specific

adverse action. Here, as in *Twombly*, "a formulaic recitation of the elements of a cause of action" is insufficient to state a claim for which relief can be granted. *Twombly*, 550 U.S. at 555. Accordingly, this claim under the First Amendment must be dismissed.

### C. Eighth Amendment Denial of Adequate Medical Healthcare (Count IV)

As to Plaintiff's claim of the denial of adequate medical healthcare under the Eighth Amendment, Plaintiff alleges that Dr. Letizio was "deliberately indifferent" to Plaintiff's need for medical care in "choosing not to consider known factual evidence of adverse effects and risk of death" from the COVID-19 vaccine and "prolonging [Plaintiff's] pain and suffering." ECF No. 33 ¶ 82; *see also* U.S. Const. Amend. VIII. Plaintiff also alleges that Dr. Letizio "intentionally attempted to mislabel [an] obvious known blood clot as a 'cyst' although no cystic matter appeared in the X-ray, submitting a false document and diagnosis." *Id.* ¶ 27. Plaintiff further alleges that Dr. Letizio was "deliberately indifferent to [Plaintiff's] need for medical care" when he performed two surgical procedures without wearing protective gear—which Plaintiff characterizes as "unlawful," "unreasonable," and "unnecessary." ECF No. 33 ¶ 83. Plaintiff alleges that Dr. Letizio "numbed his left elbow" prior to the procedure (*id.* ¶ 30) but at the same time alleges that Dr. Letizio did not use an anesthetic. *Id.* ¶ 83.

To state a claim for denial of adequate medical care under the Eighth Amendment, an inmate must demonstrate "deliberate indifference" to a "serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976) ("It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment") (citations omitted). "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Id.* at 106. Deliberate indifference exists "where the prison official (1) knows of a prisoner's need for medical treatment but

intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). It is a "well-established rule that mere disagreements over medical judgment do not state Eighth Amendment claims." *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990).

Here, the Court finds that Plaintiff failed to allege specific facts that could plausibly give rise to an inference of "deliberate indifference" to a "serious medical need." *See Estelle*, 429 U.S. at 104. In fact, rather than showing that Dr. Letizio refused to provide medical treatment, delayed medical treatment based on a non-medical reason, or prevented Plaintiff from received medical treatment, Plaintiff's Amended Complaint facially makes clear that Dr. Letizio provided medical treatment to Plaintiff by diagnosing a cyst and performing multiple surgical procedures. As to the COVID-19 vaccine, Plaintiff has failed to allege facts showing that Dr. Letizio was responsible for the decision to inoculate Plaintiff. Thus, this Court concludes that Plaintiff has failed to state a claim for denial of adequate healthcare under the Eighth Amendment, and this claim must be dismissed. *See Iqbal*, 556 U.S. at 678.

### D. Eighth Amendment Cruel and Unusual Punishment (Count V)

Plaintiff alleges that Dr. Letizio violated his Eighth Amendment right to be free from cruel and unusual punishment. *See* U.S. Const. Amend. VIII. However, Plaintiff makes no specific allegations as to Dr. Letizio regarding this count. In fact, the first paragraph of Plaintiff's allegations related to this count refer only to the already-dismissed DOC Defendants. The second paragraph of allegations regarding this count refers to "the defendants," without making any specific mention of Dr. Letizio. In this second paragraph, Plaintiff alleges that "the defendants" subjected Plaintiff to a great hardship atypical from the norm of everyday prison life of solitary

confinement with the threat of "unvaccinated" labelling. ECF No. 33 ¶ 87. As discussed, *supra*, Plaintiff's Amended Complaint does not develop an allegation of solitary confinement as Plaintiff refers to solitary confinement only in the context of it somehow allegedly relating to his medical treatment. Plaintiff further alleges that "the defendants" did not provide appropriate accommodations and housing; did not enforce a court order pertaining to hunger strike, retaliatory conduct, discrimination, and inhumane conditions; did not consider the COVID-19 pandemic and safety measures or the adverse effects of the vaccine; did not provide reasonable care and conditions for Plaintiff's hardship and obvious serious medical needs; and subjected Plaintiff to unlawful, excessive medical co-pay charges. *Id.*

The Eighth Amendment prohibits punishment that "violates civilized standards of humanity and decency." *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997). To "sufficiently allege prison officials violated [Plaintiff's] Eighth Amendment rights by imposing inhumane conditions, [Plaintiff's] complaint had to allege facts showing (1) the deprivation he endured was sufficiently serious, and (2) the prison officials had a sufficiently culpable state of mind." *Clark v. Coupe*, 55 F.4th 167, 179 (3d Cir. 2022) (internal quotations omitted).

Plaintiff has failed to satisfy either prong to sufficiently allege an Eighth Amendment cruel and unusual punishment violation. Plaintiff has failed to provide any actions or inactions taken by Dr. Letizio and has failed to sufficiently demonstrate Dr. Letizio's culpable state of mind. Most of Plaintiff's allegations as to this count—such as separating inmates based on vaccination status, providing accommodations and housing, enforcing court orders, and charging medical co-pays—relate to administrative and managerial activities for which a medical doctor at a prison has no responsibility. Plaintiff's remaining allegations under this count—that defendants did not consider the adverse effects of the vaccine or provide reasonable care and conditions for Plaintiff's hardship

11

and obvious serious medical need—have been addressed by the Court in its discussion of Plaintiff's claim of denial of adequate medical healthcare under the Eighth Amendment. Thus, this Court concludes that Plaintiff has failed to state a claim against Dr. Letizio for cruel and unusual punishment under the Eighth Amendment, and this claim must be dismissed.

### E. Fourteenth Amendment Due Process and Equal Protection (Count IX)

Plaintiff includes Dr. Letizio as a defendant in his claim under the Fourteenth Amendment yet makes allegations only against the already-dismissed Janssen Defendants and DOC Defendants, without making even a general reference to all defendants as a group. Any claims against Dr. Letizio under the Fourteenth Amendment should be dismissed because Plaintiff "failed to sufficiently allege the personal involvement of Dr. Letizio for these constitutional violations." ECF No. 45 at 13. Because Plaintiff failed to plead *any* action or inaction by Dr. Letizio related to this claim, the Court need not even reach the issue of whether the Fourteenth Amendment can apply against Dr. Letizio as a defendant sued in his individual capacity, or whether a defense of qualified immunity can apply here. *See Davis v. Malitzki*, 451 F. App'x 228, 232 (3d Cir. 2011) ("Qualified immunity is an affirmative defense available to government officials who are sued in their personal capacities for money damages."). Plaintiff's claim against Dr. Letizio under the Fourteenth Amendment must be dismissed.

### F. State Law Claims (Counts VII, VIII, X)

Plaintiff seeks to invoke this Court's supplemental jurisdiction over related state law claims. ECF No. 33 ¶ 2. Particularly, as it relates to Dr. Letizio, Plaintiff alleges claims of (1) Abuse of Process (42 Pa. C.S. § 8351) (Count VII); (2) Intentional Infliction of Emotional Distress ("IIED") (Count VIII); and (3) Medical Malpractice (Count X). *See id.* ¶¶ 93-100, 106-07.

Having dismissed all outstanding federal claims, the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims. A court "may decline to exercise supplemental jurisdiction [over state law claims] if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right," and thus, whether or not to exercise supplemental jurisdiction once all federal claims have been dismissed is within the discretion of the district court. *Hall-Wadley v. Maint. Dep't*, 386 F. Supp. 3d 512, 519 (E.D. Pa. 2019) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)). "When all federal claims are eliminated before trial, 'the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Id.* (citing *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Because this case has not progressed past the motion to dismiss stage, the Court finds it appropriate to exercise its discretion and dismiss the remaining state law claims without prejudice.

## V.   CONCLUSION

Therefore, Dr. Letizio's Motion to Dismiss (ECF No. 45) is granted. All claims grounded in federal law against Dr. Letizio are dismissed with prejudice and all claims grounded in state law are dismissed without prejudice.

BY THE COURT:

/s/ Chad F. Kenney

**CHAD F. KENNEY, JUDGE**